IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CRYSTAL STRITTMATTER, | ) | CASE NO. 5:22-CV-00692 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | JONATHAN D. GREENBERG |
| KILOLO KIJAKAZI, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| Defendant. | ) | **AND ORDER** |
| | ) | |

Plaintiff, Crystal Strittmatter ("Plaintiff" or "Strittmatter"), challenges the final decision of Defendant, Kilolo Kijakazi, Acting Commissioner of Social Security ("Commissioner"), denying her applications for Disability Insurance Benefits ("DIB") under Titles II of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq.* ("Act").  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) and the consent of the parties, pursuant to 28 U.S.C. § 636(c)(2).  For the reasons set forth below, the Commissioner's final decision is AFFIRMED.

1

# I. PROCEDURAL HISTORY

In April 2019, Strittmatter filed an application for DIB alleging a disability onset date of July 1, 2013, and alleging disability due to narcolepsy with cataplexy, depression, anxiety, sleep attacks, memory issues, concentration issues, obesity, fatigue, and pain. (Transcript ("Tr.") at 267.) Her applications were denied initially and upon reconsideration, and Strittmatter requested a hearing before an administrative law judge ("ALJ"). (Tr. 118, 125, 219) On April 21, 2020, ALJ Paula Goodrich held a hearing, during which Strittmatter, represented by counsel (Chad Delesk), and an impartial vocational expert ("VE") testified. (Tr. 60-110.) On July 8, 2020, the ALJ issued a written decision finding Plaintiff was not disabled. (Tr. 126-44). The ALJ's decision became final on March 3, 2022, when the Appeals Council declined further review. (Tr. 1156)

On April 29, 2022, Strittmatter filed her Complaint to challenge the Commissioner's final decision. (Doc. No. 1.) The parties have completed briefing in this case. (Doc. Nos. 8, 10, 11). Strittmatter asserts the following assignment of error:

(1) Whether the ALJ's Step Three finding is supported by substantial evidence.
(Doc. No. 8 at 9).

# II. EVIDENCE

## A. Personal and Vocational Evidence

Strittmatter was born in 1973 and was forty-seven years old at the time of her administrative hearing, making her a "younger" person under social security regulations. (Tr. 112.) *See* 20 C.F.R. §§ 404.1563(c). She has at least a high school education and is able to communicate in English. (Tr. 117) She has past relevant work as an insurance clerk. (Tr. 137.)

B.      **Relevant Medical Evidence**[1]

On October 27, 2010, Strittmatter treated with board-certified sleep specialist Frankie R. Roman, M.D., who diagnosed narcolepsy with cataplexy. (Tr. 383) Strittmatter attended medication management appointments with Dr. Roman. (Tr. 369-80). In December 2012, her medications were listed as Vyanase, Ritalin, dextroamphetamine, and Xyrem. (Id.)

In July 2013, Strittmatter was hospitalized at Summa Health System for stroke-like syndrome with left-sided hemiplegia. (Tr. 426) She indicated, at that time, that she had a history of narcolepsy and had been on mediation for narcolepsy for many years. (Tr. 625) The attending physician noted that, "it was really difficult to tell" whether her symptoms were a result of her narcolepsy medications, specifically amphetamines. (Id.) After speaking with Dr. Roman, it was decided to "hold her amphetamines at this time as they do portend a higher risk of stroke and MI." (Tr. 452)

When Strittmatter returned to Dr. Roman in March 2014, it was noted that she had been off her narcolepsy medications for seven months. (Tr. 403) She reported struggling with excessive daytime sleepiness, poor attention span and concentration, and increased cataplectic attacks. (Id.) She also stated that her quality of life had deteriorated significantly. (Id.) Dr. Roman restarted her on Xyrem. (Id.)

In February 2015, Strittmatter reported that she had not been on medication for her narcolepsy since July 2014. (Tr. 749) She reported the Xyrem was "effective," but required a neurologist to provide it, and she was no longer seeing Dr. Roman. (Id.)   In April 2015, Strittmatter reported she was still seeking a neurologist. (Tr. 740) In May 2015, Strittmatter reported that she was not currently taking any medication for narcolepsy and had no residual deficits from her stroke. (Tr. 509) In January 2016, it was

---

[1] The Court's recitation of the medical evidence is not intended to be exhaustive and is limited to the evidence cited in the parties' Briefs.

again noted that Strittmatter was "not currently on treatment" for her narcolepsy. (Tr. 710) At that appointment Strittmatter exhibited a left eye "twitch." (Tr. 711) The remainder of her neurological tests were unremarkable. (Id.)

On November 19, 2016, Strittmatter reported chronic fatigue secondary to narcolepsy and it was noted that her narcolepsy without cataplexy was "doing well." (Tr. 662). On October 17, 2019, neurologist Dr. Ewing-Wilson administered a MSLT that yielded abnormal results consistent with a diagnosis of narcolepsy (Tr. 904). Test results noted that Strittmatter should not drive or operate heavy machinery when sleepy and that "wake-promoting medications may be indicated." (Id.)

C.   **Medical Opinions**

In June 2019, non-examining State agency consultants Drs. Green and Warren reviewed Strittmatter's file and determined that (a) insufficient evidence existed to determine functional effects of her mental health impairment, (b) she did not meet Listing 11.22, Motor Neuron Disorders Other than ALS; and (c) she retained the residual functional capacity (RFC) to complete work with the following exertional limitations: occasional lifting/carrying 20 pounds; frequent lifting/carrying 10 pounds; standing/walking/sitting for 6 hours in an 8 hour workday; avoiding hazard exposure; and no climbing ladders, ropes, or scaffolds. (Tr. 115-16). On reconsideration, in August 2019, non-examining State agency consultants Drs. Teague and Zeune affirmed the June 2019 opinions. (Tr. 120-25)

D.   **Hearing Testimony**

During the April 21, 2020, hearing, Strittmatter testified to the following:

- Strittmatter testified that narcolepsy was her biggest medical concern. She believed she was originally diagnosed with narcolepsy in 2005 and started medication at that time. Strittmatter stated she had a stroke in 2013 and, at that time, it was determined to take her off the amphetamines she used to treat her narcolepsy. Prior to her stroke, she felt the narcolepsy medication had been helpful. Strittmatter stated that she discontinued taking the only medication

    that helped with her narcolepsy because the medication was not covered under Medicaid due to an "issue with the treating doctor." She stated she could not find a sleep specialist to prescribe the drug and expressed some issues with insurance changes. Strittmatter stated that her narcolepsy caused her to need more frequent naps and causes her to fall into "micro sleeps" which could happen as frequently as once an hour. She also states that she experienced cataplexy five or six times a day, lasting up to four minutes.

- She stated that she started treating with a neurologist again in 2019, but currently did not take medication. Strittmatter stated that there was no treatment for narcolepsy other than stimulants, which she would not take due to stroke risk. Regarding cataplexy, Strittmatter stated that she did not take medication for that condition because the nighttime medication could cause respiratory distress and she needed to get her sleep apnea "under control again" before resuming medication. She also stated that she intended to undergo bariatric surgery. She stated that after she stopped taking her medication her narcolepsy and cataplexy "got really, really bad." She said she was "adjusting to life" without the medication and "learning to live with it." She said that prior to 2018, her symptoms were worse than they are today.

- Strittmatter also discussed her depression diagnosis stating that it compounded her sleepiness and that not working made her more depressed. She stated she began treatment for depression in 2018. She felt her mental capacity had diminished, particularly when working with numbers.

(Tr. 77-100)

The VE, Daniel Simone, testified that Strittmatter had past work as an Insurance Clerk, a Supervisor-Claims, and a Title Clerk/Typist. (Tr. 101-02) The ALJ posed a hypothetical scenario to the VE, asking whether an individual of Strittmatter's age, education, and vocational background could perform Strittmatter's past work with the following theoretical limitations:

> Occasional lifting, standing, or carrying including upper pulling 20 pounds; frequent lifting, standing, or carrying including up pulling 10 pounds; pushing and pulling unlimited other than indicated; stand and/or walk or sit with normal breaks for six hours in an eight-hour workday; never climb ladders, ropes, or scaffolds; avoid hazardous machinery, unprotected heights, and commercial driving.
> - The VE stated the hypothetical individual could perform Strittmatter' s past work as an Insurance Clerk, Title Clerk, or Claims Supervisor as is typically performed.

(Tr. 101-04.)

### III. STANDARD FOR DISABILITY

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 & 404.1505(a).

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4). *See also Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time of the disability application. 20 C.F.R. §§ 404.1520(b) & 416.920(b). Second, the claimant must show that she suffers from a "severe impairment" that "significantly limits . . . physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c) & 416.920(c); *Abbot*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets or medically equals a required listing under 20 CFR Part 404, Subpart P, Appendix 1, the claimant is presumed to be disabled regardless of age, education or work experience. *See* 20 C.F.R. §§ 404.1520(d) & 416.920(d). Fourth, if the claimant's impairment or combination of impairments does not prevent him from doing his past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) & 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1560(c), & 416.920(g).

## IV. SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. Claimant last met the Social Security Act insured status requirements on December 31, 2018.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of July 1, 2013, through her date last insured of December 31, 2018 (20 CFR 404.1571 et seq.).

3. Through the date last insured, the claimant had the following severe impairments: obesity, status-post transient ischemic attacks/stroke-like syndrome with left hemiplegia, and narcolepsy (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. Claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that the claimant must never climb ladders, ropes or scaffolds and must avoid all exposure to unprotected heights, hazardous machinery, and commercial driving.

6. Through the date last insured, the claimant was capable of performing past relevant work as an insurance clerk (DOT#214.362-022), having a sedentary exertional level designation [but which the claimant performed at the medium level of exertion] and a specific vocational preparation factor of five, claims supervisor (#241.137-018), having a sedentary exertional level designation [but which the claimant performed at the light level of exertion, and a specific vocational preparation factor of seven, and title clerk, typist (#203.582-066), having a sedentary exertional level designation [but which the claimant performed at the medium level of exertion] and a specific vocational preparation factor of three. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. Claimant was not under a disability, as defined in the Social Security Act, at any time from July 1, 2013, alleged onset date, through December 31, 2018, date last insured (20 CFR 404.1520(f)).

(Tr. 132-39.)

## V. STANDARD OF REVIEW

"The Social Security Act authorizes narrow judicial review of the final decision of the Social Security Administration ["SSA"]." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011). Specifically, this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010); *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is "'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). When determining whether substantial evidence supports an ALJ's findings, the Court does not review the evidence *de novo*, make credibility determinations, or weigh evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

Review of the Commissioner's decision must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The findings of the Commissioner are not subject to reversal, however, merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached.") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.,White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir.1996); accord *Shrader v. Astrue*, No. 11–13000, 2012 WL 5383120, at *6 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, No. 1:10–cv–734, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Hook v. Astrue*, No. 1:09–cv–1982, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI. ANALYSIS

### A. Strittmatter has not shown that the Commissioner erred at Step Three

In Strittmatter's sole assignment of error, she argues that the ALJ's step three determination was not supported by substantial evidence. (Doc. No. 8 at 10) She asserts that her narcolepsy and cataplexy medically equal the requirements of Listing 11.02 and, therefore, the ALJ's failure to discuss Listing 11.02 requires remand. (Id.) The Commissioner counters that because the medical evidence did not raise a substantial question as to whether Strittmatter's narcolepsy impairment medically equaled the listing,

the ALJ was not required to specifically identify and discuss that listing. (Doc. No. 10 at 9)

Under the regulations, the Listing of Impairments ("listings"), "describes for each of the major body systems impairments that [the agency] consider[s] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a). Because the listings permit a disability finding based solely on medical evidence (without consideration of a claimant's vocational profile), the Commissioner applies a heightened evidentiary standard. *See Lee v. Comm'r of Soc. Sec.*, 529 F. App'x 706, 710 (6th Cir. 2013) (*citing Sullivan v. Zebley*, 493 U.S. 521, 531 (1990)). Plaintiff has the burden to show that her impairments meet or equal a listing. *See Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

Strittmatter argues her impairments *equal* a listing. To make a finding of medical equivalence, an ALJ must have either: 1) a prior administrative finding from an agency doctor that supports the finding of medical equivalence, or 2) medical expert evidence; or 3) a report from the appeals council medical staff to support the finding of equivalence. See Social Security Ruling (SSR) 17-2p. The ALJ must articulate with citation to the record why an individual equals a listing, but if an individual does not equal a listed impairment the ALJ is "not required to articulate specific evidence…" Id.

There is no specific listing for narcolepsy and cataplexy. However, SSA guidance provides that narcolepsy should be considered comparable to the listing for epilepsy - Listing 11.02. POMS DI 24580.005C *Determination Of The Severity Of Narcolepsy* ("Although narcolepsy and epilepsy are not truly comparable illnesses, when evaluating medical severity, the closest listing to equate narcolepsy with is Listing 11.02, Epilepsy."). Strittmatter argues that remand is required because the ALJ's failed to discuss listing 11.02 and, therefore, failed to build an accurate and logical bridge. Doc. No. 8 at 11. In the alternative, Strittmatter argues that the ALJ's failure to discuss Listing 11.02 requires reversal

because the medical evidence raised a "substantial question" as to whether she met Listing 11.02. The Commissioner asserts that Strittmatter's arguments are intertwined because "[a]n ALJ is only required to address a particular listing in significant detail when the record raises a 'substantial question' as to whether the claimant meets the requirements of the listing." *Pasiak v. Comm'r of Soc. Sec.,* 800 F. App'x 301, 304 (6th Cir. 2019) (*citing inter alia Abbott v. Sullivan*, 905 F.2d 918, 925 (6th Cir.1990)). Nonetheless, the Commissioner argues that Strittmatter's argument fails either way because the evidence does not establish that Strittmatter's impairment medically equaled the listing at issue. (Doc. 10 at 10)

Listing 11.02 requires a disability claimant to provide evidence of the following:

**11.02 Epilepsy, documented by a detailed description of a typical seizure and characterized by A, B, C, or D:**

A. Generalized tonic-clonic seizures (see 11.00H1a), occurring at least once a month for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C).

OR

B. Dyscognitive seizures (see 11.00H1b), occurring at least once a week for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C).

OR

C. Generalized tonic-clonic seizures (see 11.00H1a), occurring at least once every 2 months for at least 4 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C); and a marked limitation in one of the following:

1. Physical functioning (see 11.00G3a); or
2. Understanding, remembering, or applying information (see 11.00G3b(i)); or
3. Interacting with others (see 11.00G3b(ii)); or
4. Concentrating, persisting, or maintaining pace (see 11.00G3b(iii)); or
5. Adapting or managing oneself (see 11.00G3b(iv)).

OR

D. Dyscognitive seizures (see 11.00H1b), occurring at least once every 2 weeks for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C); and a marked limitation in one of the following:

    1. Physical functioning (see 11.00G3a); or

    2. Understanding, remembering, or applying information (see 11.00G3b(i)); or

    3. Interacting with others (see 11.00G3b(ii)); or

    4. Concentrating, persisting, or maintaining pace (see 11.00G3b(iii)); or

    5. Adapting or managing oneself (see 11.00G3b(iv)).

The ALJ did not address Listing 11.02. Strittmatter argues the ALJ's failure to do so denies meaningful review because the ALJ did not build an accurate and logical bridge between the evidence and the ALJ's determination that Strittmatter did not meet a listing. Doc. No. 8 at 11. In support of her argument, Strittmatter cites to (1) an unreported case from this Court and (2) POMS guidelines.

First, Strittmatter argues that her case is analogous to *Westover v. Comm'r of Soc. Sec.,* No. 5:17 CV 2606, 2019 WL 1242944, at *1 (N.D. Ohio Mar. 18, 2019). In *Westover*, this Court reversed the decision of the Commissioner because the ALJ lacked an opinion on the issue of medical equivalence. However, *Westover* does not apply to this case because it was based on a prior Social Security Ruling ("SSR") 96-6p. SSR 96-6p required an ALJ to obtain a medical expert opinion "before a decision of disability based on medical equivalence can be made." However, SSR 17-2p replaced SSR 96-p6. See SSR 17-2p, 2017 WL 3928306, at *1 (Mar. 27, 2017) ("This Social Security Ruling (SSR) rescinds and replaces SSR 96-6p") Under SSR 17-2p, an ALJ need not obtain evidence from a medical expert on equivalence if the "evidence does not reasonably support a finding that the individual's impairment(s) medically equals a listed impairment." 2017 WL 3928306, at *4 (SSA Mar. 27, 2017); *see also Marvin v. Comm'r of Soc. Sec.*, No. 1:17-CV-330, 2018 WL 4214339, at *3 n.3 (W.D. Mich. Aug. 10, 2018), adopted, 2018 WL 4208682 (W.D. Mich. Sept. 4, 2018) ("[T]he Social Security Administration has clarified that an ALJ is not required to obtain a medical expert's opinion before making a finding that an

individual's impairments do not meet or equal a listing impairment."); *Mitchell v. Comm'r of Soc. Sec.*, No. 1:18-CV-808, 2019 WL 2125540, at *3 (W.D. Mich. Apr. 19, 2019), adopted, 2019 WL 2120121 (W.D. Mich. May 15, 2019) ("In SSR 17-2p, the Social Security Administration clarified that an ALJ is not required to obtain a medical expert's opinion before making a finding that an individual's impairments do not equal a listing impairment."). SSR 17-2p further provides, "a statement that the individual's impairment(s) does not medically equal a listed impairment constitutes sufficient articulation for this finding." Thus, *Westover* does not apply and does not support remand.

Strittmatter also suggests that SSA's POMS DI 24580.005 (Evaluation of Narcolepsy) guidance supports her request for remand. That argument is also unavailing. POMS DI 24580.005 states that Listing 11.02 (Epilepsy) is the closest listing to narcolepsy. However, POMS guidelines do not create an obligation for the ALJ to discuss Listing 11.02 in all cases of narcolepsy and POMS guidelines are not legally binding on the Court or the Commissioner. *See Paxton v. Comm'r of Soc. Sec.*, 2020 WL 3026233, at *8 (S.D. Ohio June 5, 2020) (rejecting the claimant's argument that the POMS guidelines serve as a basis for reversing the ALJ's decision; "It is well-established that the POMS, as not subject to the formal rule-making procedure found in the Administrative Procedure Act, does not have the force of law[,]", citing *Davis v. Sec'y of Health & Human Servs.*, 867 F.2d 336, 340 (6th Cir. 1989) ("the POMS is a policy and procedure manual that employees of the Department of Health & Human Services use in evaluating Social Security claims and does not have the force and effect of law")); *Selyak v. Comm'r of Soc. Sec.*, 2018 WL 3244618, at *11 (N.D. Ohio May 22, 2018).[7]

In addition, POMS DI 24580.005 provides, "[I]t is important to obtain from an ongoing treatment source a description of the medications used and the response to the medication[.]" Here, the ALJ discussed medical records demonstrating that medication had been effective in controlling Strittmatter's narcolepsy:

> Owing to the conviction that the typical stimulants prescribed in treatment for this impairment had been the catalyst for the first of her stroke-like episodes (5F/82), the claimant was without medication for some seven months (4F/3). She was prescribed an alternative, "Xyrem" on March 21, 2014 (4F/3), but even though this was effective to control her symptoms, she would go without this medication after July 2014 (7F/98), 5F/99), (7F/2).

(Tr. 135) The ALJ continued to address non-compliance later in the decision:

> The claimant would lose her insurance in early 2017, and would not be approved for Medicaid until mid-2019. There is, consequently, a significant "gap" in treatment from February 2017 until June 2019. Neither improvement, nor non-compliance is presumed from the want of treatment, but neither is it permissible to assume deterioration from the status reported as of February 2017.

(Tr. 136) Thus, POMS do not control and, even if it did, Strittmatter has not shown that the ALJ violated POMS.

Strittmatter argues, in the alternative, that the ALJ's failure to discuss Listing 11.02 warrants reversal because the evidence raised a "substantial question over whether her narcolepsy and cataplexy equaled Listing 11.02."[2] Doc. No. 8 at 13. However, Strittmatter fails to meet this standard.

---

[2] Although Strittmatter argues that the evidence raises a substantial question as to whether she equals a listing, she simultaneously calls into question the "substantial question" standard the Sixth Circuit endorsed in *Sheeks v. Comm'r of Soc. Sec.*, as applied to her case. 544 Fed. Appx. 639, 641-42 (6th Cir. 2013). In *Sheeks*, the Sixth Circuit found that an ALJ should address a listing if the record "raise[s] a substantial question as to whether [the claimant] could qualify as disabled" under a listing." Id. Strittmatter argues that *Sheeks* does not apply because here the ALJ was silent on the listing, and this case addresses whether Strittmatter *equals* a listing, rather than meets a listing. However, Strittmatter's reading of *Sheeks* is flawed and too narrow. The ALJ in *Sheeks,* like this case, did not mention the listing in question. See also *Smith-Johnson v. Comm'r of Soc. Sec.,* 579 F. App'x 426, 433 (6th Cir. 2014). Further, the Sixth Circuit has stated that in order to satisfy the substantial question" a claimant must point to specific evidence that demonstrates he reasonably could meet *or equal* every requirement of the listing." (emphasis added). Id. At 432; *see also Pasiak v. Comm'r of Soc. Sec.*, 800 F. App'x 301, 304 (6th Cir. 2019). Thus, the *Sheeks* "substantial question" standard applies to this case, and Strittmatter's arguments to the contrary are unavailing.

"Neither the listings nor the Sixth Circuit require the ALJ to 'address every listing' or 'to discuss listings that the applicant clearly does not meet." *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 432 (6th Cir. 2014). Where, as here, an ALJ declines to address a particular listing, the claimant "must do more than show that the ALJ's decision left open the question [of] whether [she met] that particular listing." *Sheeks v. Comm'r of Soc. Sec.,* 544 F. App'x 639, 641; *Pasiak v. Comm'r of Soc. Sec.*, 800 F. App'x 301, 304 (6th Cir. 2019). Strittmatter "must show that the open question is a substantial one that justifies a remand." *Id.* To raise a "substantial question," a claimant "must point to specific evidence that demonstrates [she] reasonably could meet or equal every requirement of the listing."

Strittmatter refers the Court to several pieces of evidence. In particular, Strittmatter states," she consistently experienced daily bouts of excessive daytime sleepiness, poor attention span and concentration, and increased cataplectic attacks (Tr. 82-86, 308, 403)" and that "[h]er quality of life deteriorated significantly once she was no longer able to take her prescribed stimulant due to the heightened risk of suffering another stroke." (Tr. 70, 77-78, 99, 426, 452, 507). The vast majority of evidence Strittmatter cites are her own complaints during her hearing testimony and in a social security form. Doc. No. 8 at 14-15 (citing 70, 77-78, 82-86, 308). As the ALJ found Strittmatter's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record," Strittmatter's self-reports, deemed not entirely credible, do not raise a substantial question as to whether she meets the listing. Strittmatter also refers to a March 2014 appointment where she had been off of her narcolepsy medication for 7 months and self-reported an increase in symptoms and a decrease in quality of life. (Tr. 403) At that appointment it was noted she had been off of her medication for 7 months (due to her stroke) and asked for an alternative prescription to help her symptoms, which she received. (Tr. 403) Strittmatter also lists

15

three records that document her stroke and the suggestion that her narcolepsy medication may have contributed to it. (Tr. 426, 452, 507) These records do not raise a substantial question that Strittmatter "reasonably could…equal every requirement of the listing."

Further, assuming *arguendo* the ALJ's decision lacked articulation at step-three, any such error would be harmless where, as here, Strittmatter has not shown evidence she medically equaled the listing. *Forrest v. Comm'r of Soc. Sec.,* 591 F. App'x 359, 366 (6th Cir. 2014) (finding ALJ's lack of articulation at step-three harmless because plaintiff had not shown his impairments met or medically equaled a listing). Listing 11.02 provides that limitations or symptoms exist "despite adherence to prescribed treatment." The SSA explains in its neurological listings (those beginning with 11), "Despite adherence to prescribed treatment means that you have taken medication(s) or followed other treatment procedures for your neurological disorder(s) as prescribed by a physician for three consecutive months but your impairment continues to meet the other listing requirements despite this treatment." (internal quotation omitted) Strittmatter has not provided evidence that she medically equaled this requirement. On the other hand, as noted earlier, the ALJ pointed to substantial evidence showing that Strittmatter's condition improved with prescribed treatment.

## VII. CONCLUSION

For all of the reasons explained above, Strittmatter has not shown that the ALJ's failure to address Listing 11.02 requires remand. As such, the Commissioner's final decision is AFFIRMED.

**IT IS SO ORDERED.**

                                        *s/Jonathan D. Greenberg*
                                        Jonathan D. Greenberg
                                        United States Magistrate Judge

Date: January 17, 2023